Morning, Your Honors. May it please the Court, Peter Dion Kindem on behalf of Plaintiff and Appellant George Huerta. We're here on a review of a motion for summary judgment, but based on my review of the District Court's ruling, it seems that the District Court thought it was making a trial on the merits when it was the fact finder. But that's not the proper role of a District Court on a motion for summary judgment. The proper role is to determine whether there are any issues of fact. And here there are multiple issues of fact. Let me address one. Start with the 5A claim. The law says that if an employer requires an employee's presence at a certain location under the wage order 16, meaning the employee is entitled to be paid any travel time thereafter, the employee is entitled to be paid for. We introduced unrebutted evidence that the first location that the employers were required to be at was at the security gate. There was no evidence submitted by defendant to contradict that. And the court completely ignored that evidence and said, no, I don't I don't believe it, essentially. And you lose because I don't believe your testimony. That's not a proper. I had a question about that argument. So the wage order 5A allows for waiver under 5D for collective bargaining agreements. Was there any collective bargaining agreement issue with respect to your first location argument? Not that was raised by the defendant. And in fact, there was a California case that specifically addressed that issue that we discussed in our papers. I think it was a Hernandez case which specifically said the fact that you may have a CPA provision is not exempt. The employer from having to pay for all hours work under 5A. So under California law, which we're dealing with, obviously, that that's not an argument that would have any weight. And we address that. There was a specific California case that rejected the identical argument raised by the defendant in that case, where the defendant in that case had attempted to say, well, the CBA says you get we pay for time and you pay for time out or you're on your own to go to go out or vice versa. I can't remember. And therefore you lose because there's a CBA. And the court said, no, you have the right under California law to be paid for all hours work. And then a union agreement can't trump California's right to be paid for all hours work. So with respect to the 5A claim, there's no evidence that there was any other location where the workers physical presence was first required. That was the only evidence in the record. But the trial court completely ignored that. And at a minimum. Is there any California law that addresses or defines what first location means? No. Not that we've been able to find. But the testimony of our declarants was that this is where we were told the first location where we had to physically be present during the workday at the beginning of the workday was. And for summary judgment purposes, the court has to accept that is true. And that was unrebutted by the defendant. So we have unrebutted testimony that they were told this is the first location. But the district court completely ignored that. And at a minimum, based on an evidence, a jury could certainly find that this was the first location where their physical presence was required. The security gate. And if that finding was made by the jury, they're entitled to all travel time thereafter. So that wouldn't apply to the exit, your exit claim, would it? Well, it would because that's travel that would have occurred after the first location. It's back and forth. So if you get first half the the wage 5A says that you're entitled to be paid for all travel time after the first location. So that obviously includes going back to the first location, not just. So, yes, it would encompass that time. Secondly, on the control theory on the security time, waiting time and exit time in Apple, the court said, when you're confined to an employee, an employer's site, an employee's premises, and you have to go through a mandatory security process, you're under their control. And the time you spent waiting for and passing through that exit security process is compensable under California law under the control prompt. And that's exactly what we have here. The employees were confined to this work to the site, which was a secured site. They couldn't leave it without going through this mandatory security process. And they couldn't do anything, run any personal errands because they were on the site and they were confined to the employer's premises, just like the Apple employees were. And in Apple, the Supreme California Supreme Court held that's compensable time because you're under their control. You can't leave. You can't do any personal errands outside the store until you go through this security process. That's control. That's compensable time waiting for and undergoing that exit security process. I'm sorry. I'd like to reserve three minutes of rebuttal time. I forgot to do that. Please watch the clock. I am. Thank you. Counsel, if I could just jump in real quick with a question. I'm trying to understand the extent of what you believe is control. And I'll give you just – this is just a hypothetical. I'm going to clear this. This is not this case. But let's say in the parking lot at this facility there's a sign that says no littering. And it's much faster for me just to throw my garbage on the ground and get in my car and leave than walk all the way across the big parking lot to the garbage can and all the way back to my car. Am I under the business's control if they require me to throw garbage in the garbage can? Because that may divert two to three minutes out of my day. I'd have to think about that hypothetical. But I think the main thing here and the key element is that if you're confined to the worksite and you can't leave just like in the Apple store without going through a mandatory security process, how are you not under their control? You can't do anything. You can't leave. So in the garbage situation then I would be under their control because I can't walk straight to my car. If I have trash, I have to throw it in the garbage can, which is across the parking lot. If they said – if they require you to do a certain act, then you're under their control. That's what the California Supreme Court has held, citing Bono, where an employer requires a certain act or an employee is restrained from leaving a premises or constrained to the worksite. That's control. So do we look at the invasiveness of the act that the employer requires, flashing a badge as you pass by versus opening bags and going through a full check? Does that matter? Well, that was present partially in Apple in the sense that if you had a bag, they could look through it. But the testimony in Apple was sometimes the people didn't even look at the bag. They just opened it, glanced at it, and that was found to be sufficient control. And interestingly in Apple, if you had your own personal technology device, all you had to do – you had to show your device and they would look – excuse me. They would look at a log to make sure it wasn't one of their devices and it had been registered. So looking at your own personal technology device and flashing that, for example, and having somebody look at it but being confined to the site and not being able to leave without doing that. If you didn't have a bag but you had an Apple phone, they would still have to compare that to the law. Well, what's the difference between that and showing a security badge? And in this case, we also had testimony that the guards were instructed to look inside the cars, look inside the pickup bed trucks, on occasion search the trunks. So that's clearly an element of control. But I don't think – I think the key issue here is not so much as the actual process itself. For example, if the rule was at the end of the day you had to check in equipment, employee equipment at the security gate and it took 10 seconds, a minute, whatever to scan it but you had to wait in line for 20 minutes. I think that would be sufficient control because you're confined to the site. So I think the key issue here as an Apple was the confinement to the site. And it's the employer's site. And it's their requirement. The employee is not getting any benefit out of this. So I think there's clearly control there under Apple. And at a minimum, again, this is not an appeal from a trial court acting as the finder of fact. It's a summary of judgment. And I think a jury could certainly find on the evidence and with instructions based on the Apple case that this was control. And therefore, at a minimum, it's an issue of fact, both as to the 5A claim, excuse me, and the security exit time and waiting claim. With respect to the bono claim, I'll call it, which establishes that if an employer says you can't leave during your lunch break, you don't have to work but you can't leave, the bono case says you're under their control and you've got to be paid for that time because that's hours worked. You're under their control. We had testimony here that was unrebutted that they could not leave the actual work site for the day during their meal periods. And we said under bono, that's control. And the legal argument that my learned opponent asserted was that, well, there's a CBA governing meal breaks. And therefore, it doesn't matter if you had to work, if the union agreement says you get half the work during your meal period but we're not going to pay you, that trumps California law. That's not the law. The union agreements can't trump the right under California law to be paid for all hours worked. And when you're under the control, that's hours worked. And therefore, if you're confined to the premises, to the work site during lunch, it's hours worked and you're entitled to be paid regardless of the union agreement. Is there a case directly on point for meal breaks? I think you cited Gutierrez, which is for travel time and waiver of travel time rather than waiver of meal breaks. Right. There's not a case directly on point on that. I'll call it the preemption issue or the CBA preemption issue. There's not a case directly on point, which is one of the reasons I think that you should defer and ask the California Supreme Court case to get involved in this issue and decide the matter. Because there is no case either in the district court level and other than the decision we're appealing or at Ninth Circuit level or in any state court. So that's one of the reasons that we want this court to refer that issue to the California Supreme Court so we can have its decision on this issue of California law, which he clearly is. OK, I think I took you over your time. Did you want to save the remaining time for rebuttal? I just have there's one other one point before reserving some rebuttal, and that's on the summer permitted to work element of hours work, which the trial court again made findings like she was the trier of fact, which she wasn't. A jury could certainly find that having to wait in a car, follow the directions of the security guard, flash a badge, wait in line, but get out of line if you forgot your badge constitutes work. That issue has never been resolved by the California Supreme Court in the security line context. They specifically reserve that issue in Apple. And I think this court should ask the California Supreme Court to weigh in on that. I'll reserve the balance of my time. All right. We'll hear from the other side. Thank you, Your Honor. May it please the court. My name is Daniel Shamus, and I'm the attorney for PSI Electrical Contractors there. The theme of the argument of Mr. Kindem was that the district court made several findings of facts and that it was for a jury. But here there really aren't any disputes as to any fact. It's purely a question of what is the legal implication of of undisputed facts? And that is properly for a court to decide as to the district court and as can certainly this court. So starting with the 5A claim that that was raised first, again, no, no, no disputed facts. We do not dispute that the employees did need to get to a badging gate first in the morning. That was undisputed. The question is whether or not showing a badge and having the badge scanned constitutes appearing for work or reporting to work. And the answer is no. Is there any case explaining what first location means? First location where the employee's presence is required? Opposing counsel says there is no case providing a definition of that. Do you agree? Well, there certainly are examples in other cases of what it means. And it's usually the situation where a crew, like, for example, in the Merlion case, that's a California Supreme Court case that is cited throughout both briefs. In that case, workers were required to go to a bus and they were and then the bus drove them to the. So they reported to a parking lot and then got on the bus. And so it was assumed there was no directly on point. It was assumed that was that a 5A or was that under just hours work? I don't think it was a 5A case. I think you're right. That's probably an hours work case. I think the Burnside case also might be a 5A case. That actually applied to CBA exemption that you were referring to. That was pre. Yeah, that's a federal case, though, right? That's one of ours. Yeah, but it was applying California law. But generally, the reporting or the 5A situation needs to be that where employees show up and they meet and they gather and they do something more than scanning the card. Okay, so there's no case that tells us that. If I understand you correctly, there's no case that tells us that. So how could the district court determine as a matter of law that the badging gate was not the first location? I think that's the question that opposing counsel is raising to us. Well, the district court interpreted what the law meant. And the district court interpreted that because otherwise it wouldn't make any sense, right? Because otherwise if there's ever a building with a lock or with a card and employees needed to scan the card to open the door, that would be the first place they needed to be, right? That's where they have to go to get paid from the door. And how do we know that's not the first location as a matter of law? The California Supreme Court hasn't told us that, correct? I suppose. I haven't heard that. But I think just common experience and common sense would say that every single workplace, every employee would have off-the-clock work because to get to a time clock, you need to report to a door. And to get to the door, you need to open it. And if your time starts there, then every single worker has off-the-clock time because as soon as they clock in, that didn't include the time that they reported to the door. So the guard shack here is best compared to a door or to a parking garage where you reach out of your window and get a ticket or things like that. Or perhaps in the courtroom downstairs, there's often what you could see a metal detector. And then the line where the public has to go through. But perhaps the clerks and perhaps staff can just flash a badge and just proceed directly to chambers. And in that situation, an hourly worker would not be considered to report to the metal detector or food security just because they had to flash a badge. So the 5-H plan— Is there a case supporting that? Or are you just saying common sense? This is just common sense. And also, all the examples of the cases that did apply 5-A, where it was a reporting, is a situation of where you have workers at a parking lot meeting, gathering, and then going somewhere else. That's our position as to what the meaning of it is. So moving on to the claim about waiting in line to leave the premises and the comparison to the Apple case. This, again, is another stretched comparison for many reasons. The main reason is that all the workers had to do was scan a card. There was nothing like the Apple case, which was locating a manager or security guard and waiting for that person that wants to become available, unzipping and opening all bags and packages, moving around items within the bag or package, removing any personal Apple technology devices for inspection, and providing a personal technology card for device verification. Again, this is a common instance of why you have to do a bag check. Maybe you go to a public event or a court. Again, this is not that. There are no searches here. Now, there is— What about—Council, to what extent do we look at the fact that there's a bottleneck that could take up to 30 minutes waiting to get up to the security gate? How does that factor into the analysis? Yeah, so waiting in line is compensable if you're waiting in line to do a compensable activity, such as a bag search, such as returning equipment, such as anything else that could be considered to be. If that act is compensable, then waiting in line to do that act is compensable. But waiting in line to exit the facility, waiting in line to enter the facility, what you can consider wrongs of workers simultaneously entering, perhaps, the doorway at the same time, an elevator, waiting for an elevator to come down or escalator, that takes time. But—and this kind of bleeds into the other issue, which is the compensability of traveling to your workstation before work and traveling from your workstation after work. In each of those cases, that is not compensable because that is simply moving to your work area. So California seems to differentiate between if you're required to be on the employer's premises, as in the Apple case, or if you're not required, as in the Overton case. So in Overton, the—I think it was an appellate court there—made a big—placed a lot of weight on the fact that you weren't required to report to the Disney parking lot. You could have just taken a bus or you could have gone right to the gate. Here, of course, they were confined to the premises, as in the Apple case. Are there any cases where an employee was required to be on an employer's premises and that wasn't deemed to be an employer control? Well, when you say required to be on the premises, you mean required to, like, leave? I mean, because all these people are required to do is leave, and that's the line situation that we're talking about. So I'm not aware of any case that deals with that specifically, but I would say that in the Apple case, let's not forget that in the Apple case, the court specifically rejected the voluntary mandatory distinction that was trying to be used by the defendant. Because the defendant says, you're not required to bring any devices to work, so you could avoid the backstretch altogether by having nothing on your person. And the court rejected that, and the court rejected that, saying, we don't think it's helpful to use the mandatory voluntary distinction in this situation. So again, in this situation, I would say that they're just waiting in line to leave. But they're required to wait to leave because they have to go through the security gate. So during this period, they have to stay on the employer's premises. I'm just trying to find out if you're aware of a case where employees are required to be on the employer's premises, and the California court said, nevertheless, they weren't under the employer's control. Is there any case like that? I didn't see one. That's why I'm asking. Yeah, I don't think there is. But I would just say that this isn't the situation where they're required to be on the premises to do anything compensable. This is just to exit, and they call it a security gate. That doesn't matter, does it? In Mendiola, the guards were sleeping. They said, even while the security guards are sleeping, they're on duty, and so it's compensable. So even while they're asleep. So they weren't required to actually work while they were asleep, but nevertheless, the court said it was compensable. Absolutely. If you require an employee to be anywhere, then that's compensable. But here, they're not required to be anywhere. They're just leaving. And the fact that it takes time to leave, so you clock out from your time clock. So could they leave from some other locale? In other words, not have to wait to go through the security gate? Were there other ways to get off the premises so they didn't actually have to wait in line? There was only one exit, and I don't think that one exit makes all post-clockout time compensable. So again, an employee is in a building, and they're on the 10th floor, and they clock out on the 10th floor. They have to go down to the lobby, they have to go to their car, and they have to drive off, and all that's uncompensated. And the fact that there might be a line of cars waiting to get out when you try to get out, you're not going to get paid for that time, and that's just— Do you have a case on point? Is there a California case that says that? So that's just common sense also? Yeah, that's just common sense. I don't think common sense goes that far in California, but that's just my view. Counselor, are there indications in the record that the security procedure during the exiting process caused the bottleneck or contributed in any way to the bottleneck? I'm trying to figure out the degree of control, because we don't have actually analogous cases, and I don't know that merely being on site is enough to provide the requisite degree of control, and that's why I think the allegation or the evidence that the wait to exit could take as long as 30 minutes has got to play a factor in assessing the degree of control, doesn't it? Well, okay, but the 30 minutes wasn't because it took 30 minutes to go through security. In fact, the testimony was there's nothing in the record about any more than a second just to flash a badge, scan, and drive on. That's why I'm asking if there's evidence in the record that the security process, flashing the badge, and at times the security could look into the vehicle, whether that in any way contributed to the bottleneck, because you're saying this is the only way out, they'd have to go down that road anyway. Did the security process in any way contribute to the bottleneck that would sometimes occur? No, there's nothing in the record to say that. I think the testimony is I just took a few seconds. I don't know if that's cited in the brief, because I don't think it was a direct issue, but I would also say that you're right. I mean, this is a long road. Again, not 30 minutes waiting to go through security. It's 30 minutes to travel the road because it's several miles, and you have to keep low speed because of the presence of endangered species. So it's a slow ride to go, and then certainly once you get to the security gate, you have to stop, roll down your window, and scan your badge. But again, that is no different than very many other facilities in California, where there is some kind of exit procedure, whether it's using a ticket, a car, or some kind of key to leave the premises. So I just wanted to conclude by talking about the mail period claim. This is a very, very direct and simple way to go about this, and it's in Wage Order 16. Wage Order 16, Section 10E says that – Wage Order 10, Subsection A says that if and unless the employee is relieved of all duties during the 30-minute mail period, the mail period shall be counted as time worked. That is the broadest possible way to say that unless you relieve an employee of all duties, it has to be paid somehow. That's what 10E says. 10E specifically identifies Subsection A, the one I just read, that shall not apply to any employee covered by a valid collective bargaining agreement. So that means that the very same subdivision in the very same Wage Order says that an employee is not – if an employee is not relieved of all duties during a mail period, then that time shall not be counted as time worked if they work under a qualifying collective bargaining agreement, which everyone agrees they did. So there's no need to look at anything else other than Wage Order 16, Section 10. So wait, 10A doesn't talk about hours worked. That's in 4, right? It says that you can – I mean, I see where it says you can waive a off-duty mail period, but I don't see how that says you can waive minimum pay for hours worked. Maybe you could point me to the language there. So it says – Yeah, so I'm looking at 10B. It says the meal period may be waived, but it doesn't say that the compensation can be waived. So if you look at 10B, 10B, as in Daniel, says, unless the employee is relieved of all duties during a 30-minute mail period, the mail period shall be considered an on-duty mail period and counted as time worked. 10E says that Subsection D – again, not A, sorry, it's D – Subsection D shall not apply to any employee covered by a valid CBA or a qualifying CBA, which this is. So 10D says that the time is counted as time worked. 10D says unless they work for a – they qualify for a CBA, in which case it's not counted as time worked. And they're trying to say it's counted as time worked. So that's the easy way to resolve that. And with no further questions, I thank you, Your Honor. I think you have a few minutes for rebuttal. We can't hear you. You're muted. Am I on? Thank you. All right. So with respect to the 5A issue, the evidence shows that this was the first location where they were physically required to be. Counsel's arguments about office buildings have nothing to do with reality because this is a construction wage order. So all his interim arguments about what's going to happen in office buildings don't apply. It's a construction wage order. And there's nothing in 5A that says you have to report. You just have to be physically present. It doesn't say you have to have a meeting between workers. It just says you have to be physically present. And the testimony that was unrebutted was that they were told that this was the first location where they had to be physically present. And there was no contrary evidence. Now, with respect to the exit security issue, the fact is that they were required by the employer to go through this. They had to wait. And the testimony in the record showed that the bottleneck for the 20 to 30 minutes was because of the security process because the cars had to stop and show their badges and be subject to a visual search in the trunks, not the trunks necessarily, but on occasion, and in the backseat. And the testimony is that's why there was the bottleneck. The wait line was because of the bottleneck, and that's what we introduced. It was unrebutted. With respect to the meal period, excuse me, with respect to the meal period claim, we're not relying on meal period law. We would have this claim without any of the wage orders regarding meal periods. And we're not claiming that they were on duty and therefore had to be paid. We were claiming that they were under the control and under 4A. That constitutes hours worked. And under the Bono case, they were entitled to be paid. And, again, with respect to the 5A and the exit security time, the issue of control, we think the evidence is sufficient to support a finding in our favor as a matter of law. But at a minimum, a jury should decide that issue, not a judge ruling as a fact finder. That's not her job. So, counsel, if you had a choice here because you said the jury should decide this, you've also said that the California Supreme Court should decide this. We've got to make a decision in this case. Which one should we make? Should the jury decide this or should we refer this to the California Supreme Court? Number one, I think you should refer the 5A claim to the California Supreme Court. I think you should refer the sufferer permitted to work, whether having to go through a security line, follow directions, et cetera, constitutes work for purposes of the sufferer permitted to work prong because that issue has been not decided in California. And in the Apple case, the court said we're not deciding it because we find control. With respect to the issue of the actual exit time and the security, I think we have law in California that the jury could be instructed on, okay, if you're confined, one of the elements of control if you're confined and can't leave. That's what the California Supreme Court said. That's a jury instruction. But that's something that a jury should be able to decide. And then the final issue, I think, that should be sent to the California Supreme Court is this whole meal period preemption issue on the theory that because there's a CBA that controls meal periods, somehow that trumps the right to be paid for all hours worked. And there's no case that's decided that. And we have the Hernandez case, or Gutierrez, I think, where it's decided, no, that's not the law. You can't trump it in the 5A context. And I think the California Supreme Court should decide whether that CBA exception under meal period law can preempt and trump the right to be paid for all hours worked under the wage order, paragraph 4. Okay. We took you way over your time. I appreciate it. I was trying to answer his questions. Yes, we appreciate that. We thank both sides for their argument in the case of George Huerta. The CSI Electrical Contractors, Inc. is submitted.
judges: IKUTA, NGUYEN, OWENS